**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VICTORIA WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:19-CV-04616 |
| | ) | |
| NICOR GAS, | ) | Honorable Harry D. Leinenweber |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO STAY LITIGATION PENDING ARBITRATION**

Defendant NICOR GAS COMPANY ("Nicor" or "Defendant"), pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and 9 U.S.C. §§ 2, 4, submits the following Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration or, in the Alternative, to Stay Litigation Pending Arbitration.

**I.      INTRODUCTION**

On July 15, 2019, Plaintiff Victoria Woods filed this lawsuit against Nicor, her former employer, alleging age discrimination in violation of the Age Discrimination in Employment Act and discrimination on the basis of color, national origin, race, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.* (Dkt. 8).

Plaintiff's lawsuit should be dismissed because all of her claims are subject to an enforceable agreement to arbitrate which requires her to litigate her claims in arbitration. In particular, Plaintiff accepted the terms and conditions outlined in an Acknowledgment and Agreement to arbitrate pursuant to Nicor's Employment Dispute Resolution Program, SHARE (Supporting Helpful Alternative Resolutions for Employees)("Arbitration Agreement"),

including the requirement that any legal claims against Nicor must be submitted to arbitration. (Declaration of Julie Perion at ¶¶ 7-12, attached hereto as Exhibit A) ("Perion Decl.").  Indeed, before filing the instant Complaint, Plaintiff submitted a Request for Arbitration pursuant to the Arbitration Agreement and began communications with Defendant to select an arbitrator. (Perion Decl. Decl. at ¶ 13, Ex. 3).  While those discussions were ongoing, Plaintiff filed this lawsuit apparently to litigate her case in both federal court and in arbitration.

Plaintiff's federal lawsuit is plainly improper.  Defendant requests that this Court compel Plaintiff to arbitrate her claims pursuant to the terms of the Arbitration Agreement and dismiss Plaintiff's Complaint with prejudice under Rule 12(b).  In the alternative, Defendant requests an order staying litigation of this lawsuit until arbitration has been completed in accordance with the terms of the Arbitration Agreement.

## II.     STATEMENT OF FACTS

Defendant Nicor is a subsidiary of Southern Company Gas (formerly known as AGL Resources Inc.), which is an energy services holding company.  Plaintiff is a former employee of Nicor.  (Perion Decl. at ¶¶ 4-6; Compl. ¶ 5).  On January 13, 2014, Nicor hired Plaintiff to work full-time as Supervisor, Construction Operations.  (Perion Decl. at ¶ 4).  On February 18, 2019, Nicor terminated Plaintiff's employment for violations of the Company's Code of Ethics, specifically for engaging in dishonest communications with colleagues, violating Nicor's Anti-Harassment policy, and her dishonesty during an Ethics interview.   (Perion Decl. at ¶ 4; Compl. ¶ 6).

On May, 28, 2013, Plaintiff entered into a written Arbitration Agreement with Nicor as a condition of seeking employment.  (Perion Decl. at ¶ 11).  As part of the Application for Employment, the agreement provides in relevant part:

I have received and read, or have been provided with an opportunity to read, the AGL Resources SHARE Program Guidebook [] which sets forth the rules for AGL Resources' employment dispute resolution program. In consideration for and as a material condition of my employment, I agree to abide by the terms of the SHARE Program Guidebook, which terms are incorporated herein by reference.

I further understand that **arbitration provided through the SHARE program is the exclusive remedy for the final and binding resolution of any present or future claims by me against the Company**, and we both agree that any such issues or disputes not resolved through other processes provided by the SHARE Program **will be decided by final and binding arbitration**, all as set forth in the SHARE Guidebook. [] I also acknowledge that **in agreeing to final and binding arbitration, I am voluntarily and knowingly giving up any rights that I may have, now or in the future, to a trial by judge or jury**, including any such statutory-based rights or relative to statutory-based claims.

(Perion at ¶¶ 11-12, Ex. 2) (emphasis added). The Arbitration Agreement also provides that the American Arbitration Association's rules for the resolution of employment disputes will apply, and that Company will pay the administrative costs and the arbitrator's fees, except for a $50 fee paid by the employee. (*Id.*).

As referenced in the Arbitration Agreement, Nicor's SHARE Program has a Guidebook that is distributed to employees. (Perion Decl. at ¶¶ 7-8, 10, Ex. 1). The SHARE Guidebook explains that arbitration is "mandatory for all employees whose date of hire was on or after October 1, 2002. Additionally, arbitration will be mandatory for those individuals submitting applications seeking employment on or after October 1, 2002." (Perion Decl. at ¶ 8, Ex. 1). The Guidebook further explains that claims subject to arbitration include, among others, claims based in tort and claims based upon allegations of unlawful discrimination. (Perion Decl. at ¶ 10, Ex. 1).

On May 28, 2013, Plaintiff electronically signed and initialed the Arbitration Agreement to confirm her understanding that arbitration was the exclusive remedy for any of her claims

against Nicor. (Perion Decl. at ¶ 11, Ex. 2). The Arbitration Agreement explicitly noted that the electronic signature "is equivalent to a handwritten signature." (*Id.*).

In fact, on July 5, 2019, Plaintiff submitted a SHARE Request for Arbitration alleging "[d]iscrimination based on race, sex, and age" relating to her employment and termination from Nicor. (Perion Decl. at ¶¶ 13-14, Ex. 3). Plaintiff signed the Request for Arbitration and confirmed that, by submitting the Request, she certified that she "read and underst[oo]d the Southern Company Gas SHARE Guidebook (Program Rules)." (*Id.*).

Despite Plaintiff's understanding of the requirement to arbitrate, her signature binding her to the same, and her affirmative steps to request arbitration pursuant to the Arbitration Agreement, Plaintiff nonetheless filed an initial Complaint in the Northern District of Illinois, on July 9, 2019, four days after filing her Request for Arbitration. (Dkt. 1). Per the Court's Order, (Dkt. 4), Plaintiff then filed an Amended Complaint on July 15, 2019. (Dkt. 8). As set forth above, the Complaint allegations all arise out of Plaintiff's employment with and termination from Nicor. The claims are based on alleged race, color, national origin, sex, and age discrimination Plaintiff experienced while employed at Nicor. (*Id.* at ¶¶ 7-20).

Plaintiff has expressly agreed to resolve disputes that she might have with Nicor exclusively through arbitration, so she may not pursue the claims in this lawsuit before this Court.

## III.  ARGUMENT

### A.  Legal Standard

#### 1.  The FAA Applies to the Parties' Arbitration Agreement

The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), which was originally enacted in 1925 "to reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane*

*Corp.*, 500 U.S. 20, 24 (1991). The FAA applies to arbitration agreements between employers and employees engaged in commerce unless the employees are transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). Therefore, the FAA applies to the Arbitration Agreement between Nicor and Plaintiff, who is a former employee of Nicor.

### 2. Federal Law Favors Arbitration

The FAA codifies a strong federal policy in favor of enforcing arbitration agreements, including agreements to arbitrate statutory claims. *See* 9 U.S.C. § 2; *Gilmer*, 500 U.S. at 25 (FAA provisions demonstrate federal policy that favors arbitration); *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 337 (2011). Arbitration allows parties to resolve their claims for "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

Any ambiguities or doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration. Decades of jurisprudence support that "[o]nce it is clear . . . that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). *See also American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013).

### 3. The FAA Provides This Court Authority to Grant the Requested Relief

Pursuant to Section 2 of the FAA, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That command applies even when the claims at issue involve federal statutory rights. *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In deciding whether the arbitration agreement is enforceable, "due regard must be given to the federal policy

favoring arbitration." *Volt Info. Sciences, Inc. v. Stanford Univ.*, 489 U.S. 468, 476 (1989)

(citation omitted). Under the FAA, an arbitration agreement must be enforced according to its

terms unless another statute articulates a "contrary congressional command." *Italian Colors*, 133

S. Ct. at 2309; *McMahon*, 482 U.S. at 226. Moreover, "[t]he burden is on the party opposing

arbitration to show that Congress intended to preclude a waiver of judicial remedies for the

statutory rights at issue." *McMaho*n, 482 U.S. at 227; *Gilmer*, 500 U.S. at 26 (noting the burden

is on the non-movant to show that Congress intended to preclude waiver of a judicial forum);

*Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003) (finding that a party seeking to

invalidate an arbitration agreement must establish that the agreement precludes them from

effectively pursuing claims in an arbitral forum).

Pursuant to Section 4 of the FAA, "upon being satisfied that the making of the agreement

for arbitration or the failure to comply therewith is not in issue, the court shall make an order

directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9

U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he Act leaves no

place for the exercise of discretion by a district court, but instead mandates that district courts

*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement

has been signed.") (emphasis in original).

## B. Plaintiff's Claims Are Subject to Mandatory Arbitration Under the Parties' Arbitration Agreements.

A court must compel arbitration under the FAA where: (1) a valid agreement to arbitrate

exists; (2) the dispute falls within the scope of that agreement; and (3) the plaintiff has refused to

proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts*

*Indus.*, 466 F.3d 577, 580 (7th Cir. 2006). Federal courts apply a "presumption of arbitrability":

"[a]n order to arbitrate the particular grievance should not be denied unless it may be said with

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

Where these conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"). *See also Dean Witter Reynolds*, 470 U.S. at 218. The party opposing arbitration bears the burden of proving that the claims at issue are not referable to arbitration. *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000); *Popovich v. McDonald's Corp.*, 189 F. Supp. 2d 772, 775 (N.D. Ill. 2002).

Here, all three requirements are easily satisfied. Thus, the Court should compel individual arbitration.[1]

### 1.    A Valid and Binding Arbitration Agreement Exists.

Plaintiff cannot dispute that she agreed to arbitrate her claims. Whether the parties agreed to arbitrate is a matter of state contract law. *Hawkins v. Aid Assoc. for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003) (citing *Tinder v. Pinkerton Sec'y*, 305 F.3d 728, 733 (7th Cir. 2002). Under Illinois law, a contract, including an arbitration agreement, is enforceable where

---

[1] The Company's SHARE Agreement has been upheld in another jurisdiction as a valid, binding agreement to arbitrate claims arising under federal discrimination statutes. *See, e.g.*, *Batiste v. Atlanta Gas Co.*, Case No. 15-CV-4144-ELR-JSA (N.D. Ga., May 22, 2017) (Attached hereto as Exhibit B).

there is offer, acceptance, and consideration. *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 (Ill. App. Ct. 2005).

Nicor furnished Plaintiff with the Arbitration Agreement, which constituted a valid offer. *See Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1005 (N.D. Ill. 2013), *aff'd*, 556 F. App'x 543 (7th Cir. 2014) (holding that plaintiff's signed agreement to enter into an arbitration agreement as a condition of employment "constitutes an offer and acceptance . . . to support enforcement of the agreement."). Employer policies that represent offers to be bound can form the basis of binding contracts, so the Arbitration Agreement—which was part of Nicor's application and which incorporated the SHARE Guidebook—was an offer by Nicor capable of forming the basis of an enforceable contract. *Id.*

Plaintiff indicated her assent to the terms and acceptance of Nicor's offer—and thus accepted the Arbitration Agreement as her sole remedy for her claims against Nicor — by electronically signing and initialing the Arbitration Agreements on May 28, 2013. (Perion Decl. at ¶ 11, Ex. 2). *See Johnson*, 928 F. Supp. 2d at 1005; *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1098 (N.D. Ill. 2015) (finding the validity of an arbitration agreement established where "[p]laintiff admittedly signed arbitration provisions which would govern some disputes between the parties."). Plaintiff also accepted the terms of the agreement by continuing her employment with Nicor after being notified of the Arbitration Agreement. *Warren v. Meijer*, No. 16 C 4706, 2017 WL 3087724, at *3 (N.D. Ill. July 20, 2017) ("An employee can accept an offer by commencing or continuing employment.") (citing *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006); *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987)). Because Plaintiff accepted the Arbitration Agreement by both signing and working after being notified of the same, Plaintiff's acceptance of the terms is valid as a matter of law.

The Arbitration Agreement at issue is also supported by consideration. The plain language of the Arbitration Agreement notes that "[i]n consideration for and as a material condition of my seeking employment and possible employment, I agree to abide by the terms of the SHARE Guidebook." (Perion Decl. at ¶¶ 11-12, Ex. 2). Further, the Arbitration Agreement binds both Nicor and its employees to arbitrate disputes.[2] (Perion Decl. Exs. 1-2). *See Chatman v. Pizza Hut, Inc.*, No 12 CV 10209, 2013 WL 2285804, at *4 (N.D. Ill. May 23, 2013) (collecting cases); *Aste v. Metro. Life Ins. Co.*, 728 N.E.2d 629, 632 (Ill. App. Ct. 2000) ("Under both Illinois and federal law, a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement."). Moreover, the Arbitration Agreement provides additional consideration in the form of Nicor's promise to pay the administrative costs and fees of the arbitrator.[3] (Perion Decl. at ¶ 12, Ex. 2). Therefore, because there was a valid offer, acceptance, and consideration, the Arbitration Agreement is valid and enforceable under Illinois law.

### 2. Plaintiff's Claims Fall within the Arbitration Agreement.

Where it is established that the parties have a contract that provides for arbitration of some issues between them, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "To this end, a court may not deny a party's request to arbitrate an issue

---

[2] "The Company also agrees to submit all eligible claims, as defined by this Guidebook, that it may have against . . . an employee whose date of hire is on or after October 1, 2002 to binding arbitration . . . ." (Perion Decl. Ex. 1 at 13). "[A]rbitration provided through the SHARE program is the exclusive remedy for the final and binding resolution of any present or future **claims by me against the Company and by the Company against me**, and we both agree that any issues or disputes not resolved through other processes provided by the SHARE Program will be decided by final and binding arbitration, all as set forth in the SHARE Guidebook." (Perion Decl. Ex. 2) (emphasis added).

[3] "AGL Resources will pay 100% of the administrative costs and fees for the arbitrator, with the exception of a $50 fee to be contributed by the applicant." (Perion Decl. ¶ 12, Ex. 2).

unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. at 1032–33 (internal quotations omitted).

Here, the clear, express language of the Arbitration Agreement establishes that all of Plaintiff's claims against Nicor are within the scope of the claims covered under the parties' Arbitration Agreement. The Arbitration Agreement broadly defines the scope of claims or issues to which it applies:

> [A]rbitration provided through the SHARE program is the exclusive remedy for the final and binding resolution of **any present or future claims by me against the Company**…

(Perion Decl. Ex. 2) (emphasis added). The SHARE Guidebook, which is incorporated by reference, further states that claims subject to arbitration include claims based in tort, *claims based upon allegations of unlawful discrimination*, claims based upon alleged violations of public policy, and claims based upon any other alleged breach of a right created by constitution, statute, regulation, or ordinance. (Perion Decl. at ¶ 10, Ex. 1 at 11) (emphasis added).

The plain meaning interpretation of the Arbitration Agreement and the SHARE Guidebook indicates that Plaintiff's employment discrimination-related allegations—to the extent they are properly plead— are encompassed within the terms of the Arbitration Agreement. Notably, none of the claims raised by Plaintiff are explicitly excluded from the Arbitration Agreement. (Perion Decl. Exs. 1-2).

Even if there were some uncertainty whether Plaintiff's claims are covered by the Agreement, which there is not, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including under circumstances where the issue is the construction of the contract language. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983). Given the broad ambit of the

10

contractual language, Plaintiff's own actions consenting to it, and the presumption favoring

arbitration, Plaintiff's claims are within the scope of his Arbitration Agreement.

3. <u>Plaintiff Refused to Proceed to Arbitration.</u>

The final requirement also is readily satisfied. Plaintiff filed her lawsuit in federal court

after requesting arbitration pursuant to the Arbitration Agreement, and then refused to agree to

arbitrate her claims after counsel for Nicor made multiple requests that Plaintiff voluntary

dismiss her claims and proceed with arbitration. This inarguably demonstrates refusal to

arbitrate. In sum, the Court should compel arbitration because all three elements are established.

**C.  The Court Should Dismiss the Case With Prejudice Rather Than Stay.**

Generally, once the court is satisfied that an issue is subject to arbitration, it must stay

trial until arbitration has been completed in accordance with the terms of the agreement. 9

U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable

to arbitration under such an agreement, [the court] shall on application of one of the parties stay

the trial of the action until such arbitration has been had in accordance with the terms of the

agreement"). An exception to this general rule applies and the case should be dismissed when --

as here -- all of the claims raised in a lawsuit are subject to arbitration. *See, e.g.*, *Johnson*, 928 F.

Supp. 2d at 1008 (recognizing "growing trend . . . favoring dismissal of a case when all of the

claims are subject to arbitration" and citing cases within the Seventh Circuit affirming such

dismissals); *Bryant v. Fulgham*, No. 12 C 823, 2012 WL 1802150, at *3 (N.D. Ill. May 17, 2012)

(dismissal appropriate because all claims subject to arbitration, leaving nothing for court to

decide unless party seeks confirmation or challenges award). *See also Grasty v. Colorado Tech.

Univ.,* 599 F. App'x 596, 597 (7th Cir. 2015) (compelling arbitration and dismissing plaintiff's

complaint).

Here, all of Plaintiff's claims are subject to the Arbitration Agreement, so there are no claims on which the Court may grant relief. *See* Section III.B.2, *supra*. Thus, the Court should dismiss the case and compel individual arbitration of Plaintiff's claims according to the terms of the Arbitration Agreement.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant requests that the Court compel Plaintiff to arbitrate her claims against Nicor and dismiss her claims against Defendant with prejudice. In the alternative, Defendant requests that the Court stay litigation of this lawsuit pursuant to Section 3 of the FAA pending Plaintiff's specific performance of the Arbitration Agreement.

DATED: September 26, 2019

Respectfully submitted,

NICOR GAS COMPANY

By  *s/ Bryan R. Bienias*
One of its Attorneys

Uma Chandrasekaran
(uchandrasekaran@seyfarth.com)
Bryan R. Bienias
(brbienias@seyfarth.com)
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
(312) 460-5000
(312) 460-7000 (facsimile)

# EXHIBIT A

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| VICTORIA WOODS,          ) | |
|          ) | |
|     Plaintiff,      ) | |
|          ) | |
| v.          ) | |
|          )     CASE NO.: 1:19-CV-04616 | |
| NICOR GAS,          ) | |
|          ) | |
|     Defendants.      ) | |
|          ) | |
|          ) | |

## DECLARATION OF JULIE PERION

I, Julie Perion, based on my personal knowledge and pursuant to 28 U.S.C. § 1746 declare as follows:

1.    I am over the age of 18, and I have personal knowledge of the facts set forth in this declaration.

2.    I am an HR Business Partner for Nicor Gas ("Nicor"). I have been an employee of Nicor since January 20, 2014.

3.    I submit this declaration in support of Defendant's Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration or, in the Alternative, to Stay Litigation Pending Arbitration.

4.    Nicor hired Plaintiff on January 13, 2014 and terminated her employment on February 18, 2019.

5.    During Plaintiff's employment, Nicor was a subsidiary of AGL Resources Inc., which is an energy services holding company.

6. On July 11, 2016, AGL Resources Inc. changed its name to Southern Company Gas.

7. Defendant has an Employment Dispute Resolution Program called SHARE (Supporting Helpful Alternative Resolutions for Employees). The SHARE Guidebook is distributed to all employees. A true and accurate copy of the SHARE Guidebook is attached hereto as Exhibit 1.

8. The SHARE Guidebook explains that arbitration is "mandatory for all employees whose date of hire is on or after October 1, 2002. Additionally, arbitration will be mandatory for those individuals submitting applications seeking employment on or after October 1, 2002." (Exh. 1, p. 10).

9. Because Nicor hired Plaintiff on January 13, 2014, this mandatory arbitration provision applied to her.

10. The SHARE Guidebook also explains that claims subject to arbitration include: claims based upon allegations of unlawful discrimination [] and claims based upon any other alleged breach of a right created by a constitution, statute, regulation, or ordinance. (Exh. 1, p. 11).

11. On May 28, 2013, as a condition of seeking employment, Plaintiff entered into a written Arbitration Agreement with Defendant. The agreement is entitled Certification and Agreement, and it is an Arbitration Agreement. Plaintiff electronically signed the Arbitration Agreement, expressly acknowledging her consent to the rules and procedures of the Agreement. The Arbitration Agreement explicitly noted that the electronic signature "is equivalent to a

2

handwritten signature." A true and accurate copy of the Arbitration Agreement is attached hereto as Exhibit 2.

12.     The Arbitration Agreement provides the rules and procedures that would govern any arbitration between the parties. It also states that the American Arbitration Association's rules for the resolution of employment disputes will apply, and Defendant will pay the administrative costs and the arbitrator's fees, except for a $50 fee paid by the employee.

13.     On July 5, 2019, Plaintiff submitted to the Company a SHARE Request for Arbitration form pursuant to the Arbitration Agreement, requesting arbitration of issues related to her employment with Nicor, specifically "[d]iscrimination based on race, sex and age." A true and accurate copy of the Request for Arbitration is attached hereto as Exhibit 3.

14.     Plaintiff signed the Request for Arbitration, expressly certifying that she "read and underst[oo]d the Southern Company Gas SHARE Guidebook (Program Rules). (*Id.*)

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 24, 2019.

Julie Perion

# EXHIBIT 1



share

Supporting Helpful Alternative
Resolutions for Employees

# Your Guidebook to Dispute Resolution in the Workplace



AGL Resources®

# Introduction

As a leader in the energy services industry, AGL Resources has undergone and continues to experience constant change. In this time of continual transformation, we know that employees want, even need, to feel that there is a safe and consistent process that can be followed to address workplace concerns. Even when it is positive, the climate of change that every business operates within today can exacerbate differences or even cause disputes within an organization. We view conflict as an opportunity to bring to light issues affecting our business and our employees. At AGL Resources, our vision is to maintain a productive work environment to allow our employees to succeed. To help achieve this vision, we are pleased to introduce you to AGL Resources' Employment Dispute Resolution Program, SHARE (Supporting Helpful Alternative Resolutions for Employees).

It is important to AGL Resources that you are given the assistance you need to manage disputes effectively, and a forum within which to resolve them. Thus, AGL Resources has always offered its employees the option of working with managers or human resources (HR) professionals to address workplace concerns. These internal options have been and continue to be very effective in resolving most issues quickly and to the satisfaction of the parties involved. However, before SHARE, if a problem was not resolved internally, employees sometimes believed that their only option was to ignore the situation or look for resources outside of AGL Resources. In response to these concerns, the company created SHARE, a comprehensive dispute resolution program that offers more options to employees encountering conflict in the workplace. The program does not alter or replace the existing means for resolving disputes early with management and human resources professionals. This can still be accomplished through the Open Door Policy. Instead, SHARE is designed to provide both you and the company with additional ways to resolve work-related issues as impartially, quickly, fairly, inexpensively and as amicably as possible, if for any reason you and your manager or human resources professional cannot resolve an issue. To accomplish these goals, SHARE pulls together the company's pre-existing workplace dispute resolution resources and adds new external resources. We are confident that SHARE will be a helpful roadmap for employees who need assistance in resolving workplace issues.

Vital to the success of the SHARE program is your ability to access the program easily when you encounter conflict at work. This Guidebook introduces you to SHARE by describing the program and walking you through each of the dispute resolution options that are available to you. If at any time you have questions or concerns regarding the program, you can always contact the SHARE program director at extension 3-3453 or 1-866-80-SHARE or email at SHARE@aglresources.com. The program director serves as a constant resource for conflict resolution at AGL Resources by guiding employees through the options made available under SHARE, answering questions, and administering the program.

SHARE is designed to mutually benefit both you and AGL Resources. By focusing on the prevention and early resolution of disputes, together we can apply our energies to the company's goal of being the best energy services company in the country. We are confident that this program will increase your satisfaction level in the handling of work-related disputes that you may encounter at AGL Resources.

 



## What is SHARE? An Overview

SHARE provides you with four distinct but integrated processes for resolving disputes: open door, the SHARE office, mediation and arbitration. The first step for resolving issues within SHARE is the open door. Open door refers to the policy which encourages employees to raise and resolve disputes early and informally with anyone in AGL Resources management and human resources. These open door options are intended to resolve issues informally, quickly and to the satisfaction of the parties involved.

The second option, the SHARE office, acts as the administrator and information center for the program. The SHARE office program director is available at any point in the dispute resolution process at AGL Resources and will work with you to keep lines of communication open with the company. The program director is available to answer any questions you may have, explore other avenues for resolution, and provide guidance about the external processes available through SHARE.

The third and fourth processes available through SHARE, external mediation and arbitration, are both dispute resolution mechanisms involving independent and neutral third-parties who assist with the resolution of work-related issues.

## Who is the SHARE Program Director?

The SHARE program director is an experienced conflict resolution specialist who coordinates and oversees the day-to-day operations of SHARE. The program director:
- provides information on each available option of SHARE
- ensures that each option of SHARE is effectively utilized
- serves as a resource for employees, managers and HR
- coaches employees on speaking to managers or HR
- acts as an objective third-party to facilitate the resolution of conflict

## When does SHARE become available to me?

SHARE became available for the resolution of work-related disputes on October 1, 2002. It is available to all United States-based, domestic employees who work for AGL Resources, its affiliates and subsidiaries in the United States, excluding: (1) leased or temporary employees; (2) independent contractors; and (3) employees covered by a collective bargaining agreement. The SHARE Program remains available to you for the length of your employment and will remain in effect after your employment with AGL Resources ends for as long as you would retain a right, under the appropriate statute of limitations, to file a claim against the company.

## Can I address any work-related issues through SHARE?

SHARE offers you help in resolving work-related disputes that may arise between you and your supervisors, managers, co-workers and the company. You may raise any work-related issues, questions or concerns that you have through the open door or the SHARE office. The program director will remain available to you at any time to assist you in your exploration of avenues for resolution. Mediation and arbitration are available solely for work-related claims against AGL Resources involving legally protected rights (such as breach of contract, wrongful discharge, discrimination, harassment, retaliation and other legally protected rights) that arise on or after October 1, 2002.

## Are there any issues that are not covered by SHARE?

There are certain types of issues that *are not covered* under SHARE. These issues are not covered either because there are other extensive remedies that are already available to you or for policy reasons. The issues that *are not covered* include:

- worker's compensation;
- unemployment compensation;
- claims expressly excluded from mediation or arbitration by statute;
- unfair labor practice claims, claims under Section 7 of the National Labor Relations Act or other claims that cannot be subject to mandatory arbitration by law;
- benefits claims and other claims under or relating to the company's pension or welfare employee benefit plans; and
- claims by AGL Resources or an employee for injunctive relief for unfair competition, use of trade secrets, confidential or proprietary information or to enforce the terms of a non-compete agreement.

In addition, those issues that are otherwise handled through the Employee Assistance Plan (EAP) (family or marital discord, drug and alcohol dependence, financial difficulties, etc.) are not addressed by SHARE. We recognize that those issues can affect you both at work and at home; however, the EAP is experienced in and better suited for assisting you with those types of issues.

## Will AGL Resources make sure that I do not get into trouble for using SHARE?

AGL Resources wants you to feel comfortable raising your work-related concerns. Therefore, AGL Resources prohibits retaliation against you when you report, in good faith, a job-related concern or complaint, or otherwise support an investigation of such reports. Anyone who retaliates against you for reporting a job-related concern or complaint will be subject to disciplinary action, up to and including termination. The company will not retaliate against you in any way for appropriately using any aspect of SHARE.

## How does SHARE affect my right to file a claim with a federal or state agency?

AGL Resources strongly encourages all employees to use SHARE. While AGL Resources hopes that SHARE will effectively handle all work-related conflict to everyone's satisfaction, SHARE does not prevent you from filing a claim with a federal, state or local administrative agency in accordance with regulatory or statutory requirements. If an employee does not exhaust the open door, SHARE office and mediation options before proceeding to arbitration or filing a claim or complaint with a federal, state or local agency or court, it is AGL Resources' intent to ask the arbitrator, agency or court to suspend the proceedings until these less formal processes available through the SHARE program have been exhausted. In addition, all job applicants seeking employment on or after October 1, 2002 and employees whose date of hire is on or after October 1, 2002 must agree to submit their claims to arbitration as a condition of seeking employment or employment with AGL Resources. Individuals already employed by a company that is subsequently acquired by AGL Resources generally will not be subject to the mandatory arbitration provisions of SHARE.



## Is my participation in SHARE kept confidential?

All proceedings and documents prepared in connection with the open door, SHARE office, mediation and arbitration under SHARE will be kept confidential to the utmost extent possible. Unless otherwise provided by law, no employment dispute resolution proceedings or documents shall be disclosed to any person other than to the participants in those proceedings, their attorneys, witnesses, the mediator, the arbitrator and, if applicable, the court and/or government agency. AGL Resources wants you to feel comfortable addressing your concerns through SHARE.

# SHARE Steps are Designed to be Fair, Accessible and Timely

Each step in the SHARE program is unique in the way in which it helps you and the company address workplace issues. The common thread is the goal of resolving issues fairly and efficiently.

## Step One: Resolving Your Issues Early Through the Open Door

There are many avenues available to you through the open door. If you have a work-related problem, taking responsibility for talking about the issue directly with the other person can often lead to its resolution and a renewed sense of satisfaction within the relationship. Sometimes, however, it might be uncomfortable to approach or to communicate effectively with the person with whom you are having difficulty. If so, you are encouraged to try to resolve the situation through your supervisor. If the person with whom you are having difficulty is your immediate supervisor, you are encouraged to speak with your human resources representative regarding the issue. AGL Resources' human resources department can act as an effective intermediary to attempt to resolve the issue.

The company also provides a 24-hour Ethics and Compliance Help Line at 1-800-350-1014 that allows employees to call at any time with work-related questions or concerns. Finally, the SHARE office is available to work with you at any time regarding work-related issues or disputes.

Whether you access your local management, human resources, the company's Ethics and Compliance Help Line or the SHARE office, the professionals staffing these offices are knowledgeable about all of the internal resources available to you at AGL Resources and can make appropriate referrals as necessary.

### *What claims can I raise through the Open Door?*

You may raise any work-related matter through the open door option.

### *How can I access the Open Door?*

There is no formal process you must follow to access the open door. Simply contact one of the internal resources (management, human resources, the SHARE office or the Ethics and Compliance Help Line) by phone, in person or in writing – whatever is most comfortable for you. To encourage open and honest communication, the company **will not** retaliate against any employee in any way for using the open door or any other aspect of SHARE in good faith.

To contact a human resources professional, please call 404-584-4411. The SHARE office can be reached at extension 3-3453, 404-584-3453 or 1-866-80-SHARE or email at SHARE@aglresources.com. The Ethics and Compliance Help Line phone number is 1-800-350-1014.

It is our hope that the open door will be successful in resolving your work-related concerns.

AGL Resources recognizes, however, that not every workplace issue will be resolved through the open door. In that instance, the SHARE office can provide further help.

## Step Two: Receiving Resolution Guidance Through the SHARE Office

Ideally, it would be of the greatest benefit to all parties if disputes could be resolved through the open door since the people directly involved with the conflict are usually the most knowledgeable about it. But sometimes conflict can create discomfort that can affect our ability to work through our problems with those who are directly involved. If the issue remains unresolved, and you would like to utilize the assistance of a facilitator, the SHARE office can guide you through the various options that are available to you.

When you bring an issue to the attention of the SHARE office, the program director will first talk with you about your experience with the open door options, inquire whether those options have been fully explored, and help identify any obstacles that may have prevented them from working. The SHARE office can answer any questions you may have, review additional internal resources that may be available, such as additional facilitation and problem-solving techniques, and explore external options, such as mediation and arbitration.

### *What claims can I raise through the SHARE office?*
You may raise any work-related matter through the SHARE office.

### *How can I access the SHARE office?*
There is no required procedure or formal paperwork required to access the SHARE office. You may raise your concerns in person, in writing or by calling the SHARE Office at extension 3-3453 or 404-584-3453. The SHARE office can also be reached toll-free from outside of Georgia by calling 1-866-80-SHARE, and is administered by a program director located at Ten Peachtree Place, NE, Location 1225, Atlanta, Georgia 30309. (Email address: SHARE@aglresources.com).

## Step Three: An Outside Neutral Mediator Can Assist in the Resolution Process

If your work-related issue is not resolved through the open door or with the assistance of the SHARE office, mediation (Step Three) may provide a solution. Mediation is a dispute resolution process that relies on the skills of an outside, neutral third party called a mediator. A mediator is specifically trained to help you and the company to understand your individual needs and interests. During the mediation, you and the company will have the opportunity to share your perspectives on the dispute. The mediator will help the parties try to reach an agreement by identifying issues, exploring possible areas for agreement, and attempting to identify a solution that is mutually satisfactory. It is important to remember that the mediator is not a decision maker or judge. The mediator will meet with each of the parties, together and separately, and assist the parties in resolving their own issues. Because mediation is a problem-solving process as opposed to an adversarial process, third-party witnesses and testimony are usually not presented to the mediator.



### What claims are eligible for mediation?

Only employment claims against AGL Resources that arise on or after October 1, 2002 and that could be brought under the laws of the United States or under state or local laws are eligible for mediation under SHARE. Claims involving a legally protected right include, but are not limited to, the following:

1. Claims based upon alleged breach of contract (These claims include alleged breach of written or oral agreements, whether express or implied. These claims also cover alleged breaches of the covenant of good faith and fair dealing.);
2. Claims based in tort;
3. Claims based upon alleged violations of public policy;
4. Claims based upon allegations of unlawful discrimination (These claims include all bases of discrimination under federal law and under the law of the state in which the employee works, including, for example, age, color, disability, national origin, race, religion and sex. Some of the statutes that provide for such claims are Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans With Disabilities Act and the Family & Medical Leave Act.); and
5. Claims based upon any other alleged breach of a right created by constitution, statute, regulation or ordinance.

Claims that are **not eligible** for mediation are listed on page two of this Guidebook.

### How can I access mediation?

Since mediation is a process that relies on external assistance by a mediator, there are a number of steps that need to be followed. First, to access mediation, you must have attempted to address your concerns through the open door. You will then need to contact the SHARE program director, who will talk with you about your experience with the open door and answer any questions you may have, review your options and provide guidance through the mediation process.

To proceed to mediation, the program director will provide you with a Request for Mediation form that you must complete and submit. Since the issues that can be brought to mediation are more limited than those that can be addressed through the open door and the SHARE office, the program director will review your mediation request and notify you if your concern is eligible for mediation. You must initiate the mediation within the time provided by applicable law for commencing an action against AGL Resources on your claim. Once mediation is agreed to by you and the company, an Agreement to Mediate is signed before the mediation process begins. If your claim is not eligible for mediation, the company will continue to work with you to attempt resolution through the appropriate internal channels at AGL Resources.

### What are some of the advantages of mediation?

Mediation has many advantages in the employment environment. First, an objective, neutral third party, who you and the company will select, facilitates the mediation session. This person will have no interest in the outcome of the dispute, and will be able to assist you and the company to work through the situation. This often leads to a greater feeling of fairness than can result in court because both you and the company will be heard, and a third party will help each party to understand the other party's perceptions. In addition, the discussions during the mediation are held privately and are confidential. Because both parties come to the mediation table in good faith trying to resolve their differences, the

environment is non-adversarial and more conducive to resolving problems than arbitration or court. Another benefit of mediation is that you and the company maintain control of the outcome because neither party is required to accept any solution proposed at the mediation. For all these reasons and more, parties frequently reach a resolution to their issues as a result of the mediation process. If you and the company are able to reach an agreement in mediation, the agreement will be outlined in writing and then both you and the company will sign the document. Finally, mediation is less expensive and much faster than taking claims to arbitration or court.

### Who will administer the mediation?

To ensure fairness, the mediation will be administered by an independent organization that provides mediators and arbitrators and that is selected by you and the company. A listing of available organizations is available through the program director in the SHARE office. All of these organizations are well recognized for their neutrality and for the quality and diversity of the mediators they provide. You and the company may also mutually agree to some other mediation organization or independent mediator that is not on the list currently maintained by the SHARE office. To learn more about available mediation services, please contact the SHARE program director.

### How will a mediator be chosen?

You and the company will reach an agreement about which neutral organization to utilize. You and the company will then jointly select a mediator from a list provided by the organization who will assist in resolving the dispute. This joint selection helps to ensure the fairness of the process. It is likely that you and the company will be able to agree on the mediator to use. However, if an agreement on a mediator cannot be reached, the administering dispute resolution organization will have the authority to choose the mediator.

### How much does mediation cost?

AGL Resources does not want mediation costs to create an obstacle to resolving disputes through mediation. Therefore, AGL Resources will pay for the majority of administrative costs and the cost of the mediator associated with mediation under SHARE, with the exception of a $50 fee to be paid by the employee to defray the costs of the mediation. Administrative costs are those fees charged by the outside dispute resolution provider for organizing and overseeing the mediation, such as scheduling the mediation session, handling associated paperwork and arranging conference rooms. Any legal fees and other expenses you choose to incur, however, will be your own responsibility.

### Should I hire a lawyer to help me through the mediation process?

Legal representation at the mediation is optional for both you and the company. If you decide to bring an attorney to the mediation, the company will bring one as well. The company reserves the right to bring an attorney to mediation at any time. Any legal fees and expenses you incur will be your own responsibility.

### Does the mediation follow a set of rules?

Although mediation is less formal than arbitration or court, the mediation process itself follows a particular set of rules to ensure that the process is fair and effective. Mediation under SHARE will follow this SHARE Guidebook and the American Arbitration Association ("AAA") Employment Arbitration Rules and Mediation Procedures in effect at the time of the mediation, regardless of the organization from which



the mediator may be selected. Any exceptions are noted in this Guidebook or are in the Agreement to Mediate that is signed by both you and the company prior to the mediation session.

You are encouraged to review this Guidebook and the AAA Employment Arbitration Rules and Mediation Procedures prior to participating in mediation. The AAA Rules are available online at www.adr.org, or contact the SHARE program director. This Guidebook and the AAA Rules supersede the rules and procedures of any other neutral organization that might be selected to administer the mediation, unless otherwise agreed by both you and the company. In the event of a conflict between anything contained in this Guidebook and the AAA Rules, this Guidebook is controlling. The Agreement to Mediate, signed by both the company and the employee prior to entering into the mediation process, may also modify the AAA's Rules and this Guidebook and will supersede those rules and this Guidebook in the event of a conflict.

The AAA, founded in 1926, is an independent public service, not-for-profit organization that offers a wide range of dispute resolution services to individuals, businesses, associations, and government. These services include administering dispute resolution methods such as mediation and providing generally accepted standard "rules" for resolving various types of disputes, including work-related disputes. The AAA is not in any way related to AGL Resources.

### What if mediation does not resolve the dispute?

It is our hope that mediation will be successful in resolving most eligible employment claims that are not resolved by earlier steps. However, AGL Resources recognizes that mediation may not resolve every concern. Arbitration is designed to bring finality to issues that could not be resolved through the less formal mechanisms available through SHARE.

### Step Four: Using an Outside Neutral Arbitrator Will Result in a Final and Binding Resolution of the Dispute

If mediation is unsuccessful, the fourth and final option that may be available to you through SHARE is external arbitration. Arbitration results in a final and binding decision. This step is optional for all existing employees who are employed by the Company as of September 30, 2002. Also, individuals already employed by a company that is subsequently acquired by AGL Resources generally will not be subject to the mandatory arbitration provisions of SHARE. Arbitration is mandatory for all employees whose date of hire was on or after October 1, 2002. Additionally, arbitration is mandatory for those individuals submitting applications seeking employment on or after October 1, 2002.

### What is arbitration?

Arbitration is a dispute resolution process that relies on the skills and expertise of an arbitrator, who is an outside, neutral third party. Unlike a mediator, however, an arbitrator renders a final and binding decision after the employment dispute is presented to the arbitrator. While the arbitration process is not as formal as a court proceeding, it is much more formal than the mediation process. Initially, an arbitration hearing date at a neutral location will be arranged. In preparation for the hearing, documents may be exchanged and, in some cases, testimony in front of a court reporter will be taken. During the arbitration process, each party has the right to subpoena witnesses and documents, present evidence and arguments, and

hear the other party's evidence and witnesses under the rules of arbitration. The arbitration hearing is held privately. Arbitration will be held in the city of the location from which you were hired. Typically within thirty days after the hearing, the arbitrator will issue a written final decision that is binding on both you and the company.

In making her or his decision, the arbitrator will apply the federal or state substantive law that would have governed the employment dispute had it been heard in an appropriate federal or state court (including, but not limited to, the applicable statutes of limitation, the applicable order and burdens of proof and the applicable remedies). The arbitrator may not grant remedies that would have been unavailable if the dispute had been heard in an appropriate federal or state court. In addition, the arbitrator may not award a remedy that neither you nor AGL Resources has requested. Finally, the rules and procedures for the arbitration, as modified by the Arbitration Agreement signed by both parties, must provide for full and fair discovery, and the arbitrator must resolve evidentiary disputes by applying the Federal Rules of Evidence.

### What claims are eligible for arbitration?

Claims that are eligible for arbitration under SHARE include the following:

1. Claims based upon alleged breach of contract (These claims include alleged breach of written or oral agreements, whether express or implied, and alleged breaches of the covenant of good faith and fair dealing);
2. Claims based in tort;
3. Claims based upon alleged violations of public policy;
4. Claims based upon allegations of unlawful discrimination (These claims include all bases of discrimination under federal law and under the law of the state or locality in which you work, including, for example, age, color, disability, national origin, race, religion and gender. Some of the statutes that provide for such claims are Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Americans With Disabilities Act and the Family & Medical Leave Act.);
5. Claims based upon any other alleged breach of a right created by constitution, statute, regulation or ordinance; and
6. Claims pertaining to the enforceability of the Arbitration Agreement to be signed by AGL Resources and the employee prior to the arbitration hearing (These claims include, but are not limited to, all matters related to the formation of the agreement and to the arbitrability of particular disputes. Therefore, all questions regarding the arbitrability of claims will be decided by the arbitrator and not by a court.).

Claims **not eligible** for arbitration are listed on page two of this Guidebook.

### How can I access arbitration?

Since arbitration, like mediation, is an external process, there are a number of steps that need to be followed. First, to access arbitration you need to have already tried to address your concerns through the other options of the SHARE program unless otherwise agreed by both you and the company. If the open door, the SHARE office and mediation were all unsuccessful in resolving the claim, the SHARE program director remains available to guide you through the arbitration process. You must complete and submit a Request for Arbitration Form, which can be obtained from the program director. Once arbitration is agreed to by you and the company, an Arbitration Agreement is signed and the arbitration process begins.



You must initiate the arbitration process under SHARE within the time provided by applicable law for commencing a legal action relating to your dispute. Once you and the company elect to bring the claim in an arbitration forum, related claims may not be brought in any other forum, unless the related claims are not eligible for arbitration under the program.

### Advantages of arbitration

Arbitration has many advantages over traditional litigation in court. First of all, it is a confidential process. Second, you and the company have equal input into the selection of the arbitrator, who will be well-versed in employment law. Additionally, arbitration is generally faster and less expensive than litigation, which can disrupt lives and generate a tremendous amount of stress and worry. Just like court litigation, however, you do have the right to be represented by an attorney at the arbitration. The arbitrator's decision is final and binding on you and the company. By agreeing to arbitrate, you and the company do waive any right to a trial by judge or jury with regard to arbitrable claims.

### Who will administer the arbitration?

To ensure fairness, the arbitration will be administered by an independent organization, selected by you and the company, which provides mediators and arbitrators. A listing of available organizations is available through the program director in the SHARE office. All of these organizations are well recognized for their neutrality and for the quality and diversity of the arbitrators they provide. You and the company may also mutually agree upon some other arbitration organization or independent arbitrator that is not on the list currently maintained by the SHARE office. To learn more about available arbitration service providers, please contact the SHARE program director.

### How will an arbitrator be chosen?

All disputes will be heard by a single arbitrator unless otherwise agreed by both you and the company. You and the company will jointly select an arbitrator to hear your dispute. This joint participation in the selection of the arbitrator helps to ensure the fairness of the process. The outside dispute resolution organization will provide a list of arbitrators from which you and the company will select an arbitrator. It is likely that you and the company will be able to successfully reach an agreement regarding the arbitrator to use. However, if no agreement on an arbitrator can be reached, the administering dispute resolution organization will have the authority to designate the arbitrator.

### How much does arbitration cost?

AGL Resources will pay all of the administration costs and arbitrator's fees for the arbitration process for a single arbitrator, with the exception of a $50 fee to be paid by the employee to defray such costs and fees. Administration costs are those fees charged by the outside dispute resolution provider for organizing and overseeing the arbitration, such as scheduling the hearing, handling associated paperwork and arranging conference rooms. If a panel of arbitrators is requested, the requesting party will bear the cost of these additional arbitrators. The expenses of witnesses will be paid by the party requiring the presence of the particular witnesses, and the expenses of gathering and producing documents will be born by the party seeking such documents, except when the arbitrator decides to shift those expenses at the conclusion of the arbitration pursuant to law. Also, if the parties mutually agree to request a witness, the expenses of the witness will be shared equally by both parties. If you choose to have counsel, you are fully responsible for your legal fees and related expenses. AGL Resources will not pay

for your attorneys' fees and related expenses.

### Should I hire a lawyer to help me through the arbitration process?

You do have a right to be represented by an attorney of your choosing during any stage of the arbitration process, including at the arbitration hearing. The attorney must be admitted to the bar of at least one state (or authorized to practice law in the state where you live). If you do elect to be represented by an attorney in the arbitration, you will be responsible for paying his or her fees and related expenses, except as provided by law. The company will have an attorney present at the arbitration hearing.

### Does arbitration follow a set of rules?

The arbitration process, like the mediation process, follows a particular set of rules to ensure that the process is fair and effective. Arbitration under SHARE will follow this SHARE Guidebook and the American Arbitration Association ("AAA") Employment Arbitration Rules and Mediation Procedures in effect at the time of the arbitration, regardless of the organization from which the arbitrator may be selected. Any exceptions are noted in this Guidebook or in the Arbitration Agreement that is signed by both you and the company prior to the arbitration hearing.

You are encouraged to review this Guidebook and the AAA Rules prior to participating in arbitration. The AAA Rules are available online at www.adr.org, or you may contact the program director. This Guidebook and the AAA Rules, as well as the Arbitration Agreement signed by the parties, supersede the rules and procedures of any other neutral provider organization. In the event of a conflict between anything contained in this Guidebook and the AAA Employment Arbitration Rules and Mediation Procedures, this Guidebook is controlling. The arbitration agreement signed by the employee and the company prior to the arbitration hearing may also modify the AAA Rules and this Guidebook and will supersede those rules and this Guidebook in the event of a conflict.

The AAA, founded in 1926, is an independent public service, not-for-profit organization that offers a wide range of dispute resolution services to individuals, businesses, associations, and government. These services include administering dispute resolution methods such as arbitration and providing generally accepted standard "rules" for resolving various types of disputes, including work-related disputes. The AAA is not in any way related to AGL Resources.

### What happens if I do not wish to arbitrate?

If you choose not to arbitrate, you are free to pursue your claim in court or with the appropriate local, state or federal agency. Many employees, however, have found that arbitration provides a much fairer, faster and less expensive forum in which to be heard. All job applicants seeking employment on or after October 1, 2002 and employees whose date of hire is on or after October 1, 2002 must agree to submit their claims to arbitration as a condition of seeking employment or accepting employment with AGL Resources.

### Is AGL Resources also required to arbitrate?

The Company also agrees to submit all eligible claims, as defined by this Guidebook, that it may have against a job applicant seeking employment on or after October 1, 2002 or an employee whose date of hire is on or after October 1, 2002 to binding arbitration through the SHARE program if such claims are not resolved through the less formal processes of Open Door, the SHARE Office, mediation or otherwise.

# Some Important Final Notes Regarding SHARE

### Your employment relationship with AGL Resources

SHARE creates more avenues for resolving your work-related issues, but it does not establish any of the terms of your employment. SHARE does not create a contract of employment, express or implied, for any period of time or guarantee that your employment will end only under certain conditions. SHARE does not alter or modify the "at will" employment relationship that may exist between you and the company.

### Changes to SHARE

Upon notice, the contents of SHARE may change or be discontinued. Any changes made to SHARE will be announced in advance of their effective dates and will then become equally binding upon you and the company. In the event of such a change, pending claims will be governed by the program in effect at the time of the filing of the Request for Mediation or Arbitration Form with the program director.

### Formal investigations will continue as required by law

For allegations of harassment in violation of federal or state discrimination laws, complaints will continue to be formally investigated in accordance with the relevant AGL Resources policies contained in the Employee Handbook and federal and state law. Allegations of harassment, discrimination and hostile work environment are serious issues that deserve immediate attention. In the event your concern relates to any of these issues, you should contact the human resources department, the SHARE program director or the company's Ethics and Compliance Help Line directly and immediately. A prompt investigation, which will be confidential to the extent possible, will be conducted, and appropriate remedial action will be taken.

### Law governing SHARE

The substantive law that governs the employment disputes under SHARE is the same state or federal law that would have applied had your claim been heard in the appropriate state or federal court.

### SHARE is here for you

Because we are committed to addressing your work-related concerns in a timely, fair and effective manner, AGL Resources encourages you to access SHARE in the event you encounter a work-related concern. SHARE provides an opportunity to bring together those individuals closest to the issue to quickly resolve disputes. It also provides a forum to formally raise concerns and disputes that you and the company are unable to resolve through informal channels. By providing an experienced neutral third-party to help settle a dispute, years of costly, frustrating and often disappointing litigation can be avoided. We hope that this program will provide our employees with certainty that their issues and concerns are important to the company and are being addressed through a uniform, yet flexible, process. We encourage you to review this Guidebook. If you have any questions regarding SHARE, please feel free to contact your human resources representative or the SHARE program director at extension 3-3453, 404-584-3453 or, from outside of Georgia, toll-free 1-866-80-SHARE.



© 2011 AGL Resources Inc. All Rights Reserved.

9389AGL

# EXHIBIT 2

make any oral assurance or promise of continued employment.

- I hereby give AGL Resources the right to make a thorough investigation of my past employment, education and activities, and release from all liability all persons, companies and corporations supplying such information. I indemnify AGL Resources against any liability that might result from making such investigation and acknowledge that the results of any such investigation may be grounds for disqualifying me or terminating my employment.

**SHARE PROGRAM**

I have received and read, or have been provided with an opportunity to read, the AGL Resources SHARE Guidebook,(http://www.aglresources.com/careers/pdfs/9389_AGLR_SHARE%20Guidebook_2011%20FINAL.pdf ) which sets forth the rules for AGL Resources' employment dispute resolution program. In consideration for and as a material condition of my seeking employment and possible employment, I agree to abide by the terms of the SHARE Guidebook, which terms are incorporated herein by reference.

I further understand that arbitration provided through the SHARE program is the exclusive remedy for the final and binding resolution of any present or future claims by me against the Company and by the Company against me, and we both agree that any issues or disputes not resolved through other processes provided by the SHARE Program will be decided by final and binding arbitration, all as set forth in the SHARE Guidebook. (Initial Here) **vew** I also acknowledge that in agreeing to final and binding arbitration, I am voluntarily and knowingly giving up any rights that I may have, now or in the future, to a trial by judge or jury, including any such statutory-based rights or relative to statutory-based claims. As provided by the SHARE program, the arbitration shall be conducted pursuant to the American Arbitration Association's (AAA) then-existing rules for the resolution of employment disputes before any mutually acceptable arbitrator. AGL Resources will pay 100% of the administrative costs and fees of the arbitrator, with the exception of a $50 fee to be contributed by the applicant.

To the extent that any aspect of this agreement, the SHARE Guidebook, or the AAA's rules are determined to be invalid or unenforceable, I agree that such term or condition shall be excluded from this agreement and the remaining terms and conditions of the agreement shall be fully enforced. I understand that this arbitration agreement does not apply to unfair labor practice claims, claims under Section 7 of the National Labor Relations Act or other claims that cannot be subject to mandatory arbitration by law.

The above agreement shall not apply to me for any period of time during which I am employed by the Company in a position covered by a collectively bargained agreement with a labor union.

To the extent that any aspect of this agreement, the SHARE Guidebook, or the AAA's rules are determined to be invalid or unenforceable, I agree that such term or condition shall be excluded from this agreement and the remaining terms and conditions of the agreement shall be fully enforced. I understand that this arbitration agreement does not apply to unfair labor practice claims, claims under Section 7 of the National Labor Relations Act or other claims that cannot be subject to mandatory arbitration by law.

The above agreement shall not apply to me for any period of time during which I am employed by the Company in a position covered by a collectively bargained agreement with a labor union.


I ACCEPT
Victoria Woods 5/28/2013 8:30 AM
Checking the checkbox above is equivalent to a handwritten signature.

# EXHIBIT 3

# *SHARE*
# *Request for Arbitration*


Southern Company
Gas

## Contact Information:

Employee Name: __Victoria Woods__

Social Security Number: __340646002__    Date of Birth: __12-22-75__

Company/Business Unit: __Nicor Gas__    Position: __Supervisor, Con Ops__

Work Location: __Joliet, IL.__

Home Address*: __7448 Sycamore Court, Orland Park, IL__
__60462__

Home Phone: (708) __737-5965__   Home E-mail: __Vickie.e.woods@gmail.com__

* Communications from the SHARE Office will be sent to the home address/email that you provide on this form unless you request that we send communications elsewhere. If you are represented by counsel, all communications will be sent to your counsel of record.

Will you be represented by an attorney in the arbitration?  ☐ Yes  ☒ No
If yes, please provide your attorney's contact information:

_____

_____

## Employment Information:

Are you currently employed with Southern Company Gas (or a SCG subsidiary or business unit)?    ☐ Yes    ☒ No

If you are not currently employed by Southern Company Gas or a SCG business unit, please indicate the date of your application with the company or the date your employment ended: __date employment ended  2-18-19__



Southern Company
Gas

**Claim Information:**

1. Please describe the details of your employment-related issue. You may attach a separate statement and/or relevant supporting documents.

_Discrimination based on race, sex and age_

2. Please identify the individual(s), if any, with whom you are in dispute or against whom you are raising your concerns:

3. Please indicate the date(s) and time(s) that the incident(s) occurred:

_2014 - 2/18/19_

4. Please provide the name(s), work location(s), and telephone number(s) of other person(s) with knowledge of the issue or incident:

Name: _Linda Serrano_
Telephone: _630-854-9133_
Work Location: _Joliet_

Name: _James Sargent_
Telephone: _815-791-1612_
Work Location: _Joliet_

5. Please describe any efforts you made to resolve this dispute through the Open Door, the SHARE Office, and Mediation, and indicate the reasons you are dissatisfied with the results.

_Mediation. It was Unacceptable._

6. Did you and the Company attend a mediation session prior to your request for arbitration?

☒ Yes. If so, please provide date of mediation _6/18/19_   ☐ No



**Southern Company Gas**

7.  What are your expectations regarding this claim and what outcome are you seeking?

_Fair treatment and reinstatement._

8.  Arbitrations can be administered by a neutral provider organization or they can be self-administered by the arbitrator. You and the Company will be jointly selecting the arbitrator from a roster provided through a neutral organization. Please indicate your choice of which neutral organization or from which roster you would like to select the arbitrator who will be hearing the dispute:

☐ No Preference

☐ National Academy of Distinguished Neutrals (www.nadn.org)

☐ Florida Academy of Mediators and Arbitrators (

☐ Georgia Academy of Mediators and Arbitrators (www.georgiamediators.org)

☒ Illinois Academy of Mediators and Arbitrators (www.illinoismediators.org)

☐ New Jersey Academy of Mediators and Arbitrators (www.njmediators.org)

☐ Henning Mediation and Arbitration (www.henningmediation.com)(Georgia)

☐ JAMS (Judicial Arbitration and Mediation Service)(

☐ AAA (American Arbitration Association) (

☐ Other (please identify): _____

**Employee Certification:**

By submitting this Request, I hereby certify that the foregoing is true and accurate and that I have read and understand the Southern Company Gas SHARE Guidebook (Program Rules).

Employee Signature: _Victoria E Woods_   Date: _7/5/19_

Received By: _____   Date: _____

**PLEASE ATTACH ANY DOCUMENTS THAT RELATE TO OR SUPPORT YOUR CLAIM**



**PLEASE ATTACH ANY DOCUMENTS THAT RELATE TO OR SUPPORT YOUR CLAIM**

**Submit via mail, facsimile, or e-mail to:**

**Southern Company Gas**
**SHARE Program Director**
**10 Peachtree Place**
**15th Floor**
**Atlanta, GA 30309**
**Phone: 404-584-4055**
**Fax: 404-486-9186**
**Email: jvictor@southernco.com**

# EXHIBIT B

FILED MAY 2 2 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ANTHONY BATISTE, | : | CIVIL ACTION NO. |
| | : | 1:15-CV-4144-ELR-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ATLANTA GAS COMPANY, a | : | |
| Georgia Corporation, SHEREE | : | |
| STURGIS, Individually, and BOBBY | : | |
| AVERY, Individually, | : | **F I N A L    R E P O R T    A N D** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff Anthony Batiste filed the above-styled civil action on November 27, 2015. The action is now before the Court on the "Defendants' Motion to Dismiss Plaintiff's Amended Complaint and to Compel Arbitration of Plaintiff's Claims or, in the Alternative, to Stay Litigation Pending Arbitration of Plaintiff's Claims" [8] ("Motion to Dismiss"). For the reasons discussed below, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss [8] be **GRANTED**, that the Plaintiff be **ORDERED** to submit his claims to arbitration, and that this action be **DISMISSED** for lack of subject matter jurisdiction, because the Plaintiff's claims are subject to a mandatory arbitration agreement.

## I.   BACKGROUND

Plaintiff Anthony Batiste filed the Complaint initiating this action on November 27, 2015. On December 25, 2015, Plaintiff filed an "Amended and Restated Complaint for Damages" [2] ("Amended Complaint"). The following allegations are taken from Plaintiff's Amended Complaint [2]. Plaintiff alleges that he is over the age of forty, and that during the relevant time period, he was employed by Atlanta Gas Light Company[1] ("AGL") until his employment was terminated in October of 2014. Am. Compl. [2] at ¶¶ 3, 11. He further alleges that Defendant Sheree Sturgis ("Sturgis") was the Human Resources Director, and Defendant Bobby Avery ("Avery") was his "first level supervisor" during the relevant time period of his employment with AGL. *Id.* at ¶¶ 6, 7, 12.

On January 17, 2012, Plaintiff was injured when a truck crank repeatedly struck his wrist. *Id.* at ¶¶ 13, 64. As a result of his injuries, he received medical treatment, including multiple surgeries. *Id.* at ¶¶ 15, 65. On or about June 25, 2013, Plaintiff returned to work but was sent home. *Id.* at ¶ 16. He alleges that, on or about August

---

[1] Plaintiff has named "Atlanta Gas Company" as a Defendant in the caption of the Amended Complaint, but he alleges that he was employed by Atlanta Gas Light Company. *See* Am. Comp. at 1, ¶¶ 3-4, 11. Defendant contends that the Plaintiff was actually employed by AGL Services Company, and that it has been improperly identified as "Atlanta Gas Company" in the caption of the Plaintiff's Complaint and Amended Complaint. *See* Def. Mot. [8] at 1 n.1.

7, 2013, AGL requested a Functional Capacity Evaluation ("FCE") which showed that Plaintiff could no longer work in his position as Crew Lead with or without accommodation. *Id.* at ¶ 16. Plaintiff's physician notified AGL on August 23, 2013, "of Plaintiff's inability to work in the Crew Lead position." *Id.* at ¶ 16. Plaintiff's physician determined that Plaintiff had reached "maximum medical improvement" ("MMI") on or about July 19, 2013, and, as a result, Plaintiff could no longer work in his regular job as Crew Lead. *Id.* at ¶¶ 17-18.

Plaintiff applied for the position of Damage Prevention Specialist, as well as Operations Foreman and Project Coordinator. *Id.* at ¶¶ 19-20, 67-68. On or about August 23, 2013, Plaintiff's physician provided a statement to AGL that Plaintiff was physically capable of performing the duties of the Damage Prevention Specialist position. *Id.* at ¶¶ 21, 69. AGL, however, assigned Plaintiff to the position of Customer Logistics Specialist, which Plaintiff alleges he was not qualified to perform. *Id.* at ¶¶ 22, 70. Plaintiff contends that AGL failed to provide him with the proper training in order to perform successfully in this position. *Id.* at ¶¶ 22, 70. According to Plaintiff, Defendant Sturgis withdrew his application for the position of Damage Prevention Specialist. *Id.* at ¶¶ 23, 71.

On or about September 9, 2013, Plaintiff filed two Charges of Discrimination against AGL with the Equal Employment Opportunity Commission ("EEOC"),

3

alleging discrimination on the basis of his age, disability, and harassment (Charge No. 410-2013-06192 and Charge No. 410-2013-03922). *Id.* at ¶¶ 30, 63, 78. On or about June 2, 2014, Plaintiff filed another Charge of Discrimination against AGL with the EEOC, alleging that he had been discriminated against on the basis of his age and disability (Charge No. 410-2014-03922).[2] *Id.* at ¶¶ 25, 73. On or about June 11, 2014, AGL placed Plaintiff on a performance plan informing him that he had 90 days to perform his job satisfactorily or he would be terminated. *Id.* at ¶¶ 26, 74. Between June 11, 2014, and June 13, 2014, Defendants Sturgis and Avery also "repeatedly called Plaintiff into meetings where he was yelled at, screamed at and threatened." *Id.* at ¶¶ 27, 75.

On or about October 27, 2014, Plaintiff was discharged from his employment at AGL while he was on medical leave. *Id.* at ¶¶ 31, 44, 78. AGL's stated reason for terminating Plaintiff's employment was "potential for workplace violence." *Id.* at ¶¶ 32, 79. Plaintiff alleges that the "unsubstantiated allegations of 'workplace violence' were based upon information [AGL] illegally obtained from Plaintiff's personal medical information." *Id.* at ¶ 42. Plaintiff "expressly denies that he

---

[2] Plaintiff states in the Amended Complaint that this Charge No. 410-2014-034922 is attached to the Complaint as Exhibit "L" but no such exhibit was attached to the Amended Complaint. *See* Am. Comp. [2] at ¶ 24. Although Plaintiff repeatedly refers to various exhibits, he attached no exhibits to the Amended Complaint filed with the Court. *See* Am. Comp. [2].

threatened to cause physical harm or otherwise made statements to anyone that could

be construed as a possible threat." *Id.* at ¶ 56. Plaintiff contends that AGL's stated

reason for terminating his employment was "pretextual" and that AGL terminated his

employment "because of his age, disability and in retaliation for his prior EEO

activity." *Id.* at ¶ 45. He further alleges that he had no opportunity to respond to his

termination, and had no notice of "any intentional, frequent or repeated misconduct

in his job performance or any progressive disciplinary measures" regarding his

violation of any rules, policies, or procedures. *Id.* at ¶ 47. According to Plaintiff, prior

to his termination he had "an impeccable record" and had "never received any official

admonishments or warnings concerning inappropriate conduct or violations." *Id.* at

¶ 48.

On or about November 5, 2014, Plaintiff filed another EEOC Charge of

Discrimination against AGL, alleging that was "discriminated against based upon,

violation of FMLA, disability discrimination and continued harassment and

retaliation" (Charge No. 410-2015-00698). *Id.* at ¶¶ 29, 77. On August 26, 2015, the

EEOC issued a Right to Sue notice to Plaintiff regarding his Charges of

Discrimination filed in September of 2013 and November of 2014 (Charge No. 410-

2013-06192, Charge No. 410-2013-03922, and Charge No. 410-2015-00698). *Id.* at

¶¶ 24, 28, 33, 72, 76, 80.

According to the Plaintiff's original allegations in the Amended Complaint, although AGL claims he signed an arbitration agreement on or about April 15, 2008, which required mandatory arbitration of all employment disputes, "Plaintiff denies ever signing such an agreement." *Id.* at ¶ 37. Plaintiff alleges that AGL has a dispute resolution program referred to as "Supporting Helpful Alternative Resolutions for Employees" ("SHARE"). *Id.* at ¶ 35. Plaintiff "made several good faith attempts to resolve his claims" against AGL "through mediation and/or arbitration through EEOC and/or SHARE," but AGL "acted in bad faith and no resolution was reached." *Id.* at ¶ 36. Plaintiff contends that he made "several good faith attempts to resolve his claims" by participating in "mediation/arbitration" on or about November 3, 2013, December 19, 2013, January of 2014, February 6, 2014, and October 24, 2014. *Id.* at ¶ 38.

Plaintiff further contends that, although he signed a "Request for Arbitration" on February 6, 2014, he did so "contemporaneously during an arbitration session held on this date while Plaintiff was unrepresented by legal counsel." *Id.* at ¶ 39. He alleges that, because of these "previous efforts of mediation and arbitration, any court-ordered mediation/arbitration would be futile." *Id.* at ¶ 43.

In the Amended Complaint, Plaintiff states that he has brought this action pursuant to the following statutes: Title VII of the Civil Rights Act of 1964

6

("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621, *et seq.*; Title I of the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101, *et seq.*; and the Civil Rights Act of 1991 and Family

and Medical Leave Act of 1993 ("FMLA"). *Id.* at ¶ 1. He also asserts claims against

the Defendants under Georgia law for defamation/slander *per se*, invasion of privacy,

unauthorized release of psychiatric records, intentional infliction of emotional distress,

and negligent infliction of emotional distress. *Id.* at ¶¶ 2, 83-135.

On February 3, 2016, Defendants filed a Motion to Dismiss [8], arguing that

Plaintiff's Amended Complaint must be dismissed on the ground that all of the

Plaintiff's claims are subject to a mandatory arbitration agreement. On February 23,

2016, Plaintiff filed a response to the motion [15] as well as a "Demand for Jury Trial

Relating to 'Defendants' Motion to Dismiss Plaintiff's Amended Complaint and to

Compel Arbitration of Plaintiff's Claims or, in the Alternative, to Stay Litigation

Pending Arbitration of Plaintiff's Claims'" [16] ("Demand for Jury Trial on

Arbitration Issue"). Defendants filed a reply [17] in support of the Motion to Dismiss

on March 11, 2016.

## II.   DISCUSSION

Defendants argue that this Court should dismiss this action in its entirety

because, they argue, all of the Plaintiff's alleged claims in this case are subject to a

7

mandatory arbitration agreement. *See* Motion to Dismiss [8] at 1. In the alternative, the Defendants request that, if the Court does not dismiss Plaintiff's claims, the Court should compel Plaintiff to submit his claims to arbitration pursuant to the requirements of the arbitration agreement, and stay the instant action pending the outcome of the arbitration proceedings. *Id.* at 1-2.

A.    *Legal Standards Governing a Motion to Compel Arbitration*

A motion to compel arbitration is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[3] *Mullinax v. United Mktg. Grp., LLC*, No. 1:10-CV-03585-JEC, 2011 WL 4085933, at *8 (N.D. Ga. Sept. 13, 2011). Under Rule 12(b)(1), the Court will dismiss an action if it lacks subject matter jurisdiction to hear a plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998).

---

[3] In Plaintiff's response to the Defendants' motion, he argues that the motion should be denied because "Defendants raise no Rule 12(b) grounds for the dismissal of the subject suit nor does Defendants [sic] cite any authority to support their 12(b) motion." Pl. Resp. [15] at 7, ¶ 12(a). Because the Defendants have argued that the Plaintiff's claims are subject to a mandatory arbitration agreement, the Court has interpreted the Defendants' motion as being brought under 12(b)(1) based on lack of subject matter jurisdiction. *Mullinax v. United Mktg. Grp., LLC*, No. 1:10-CV-03585-JEC, 2011 WL 4085933, at *8 (N.D. Ga. Sept. 13, 2011) ("Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).").

"Attacks on subject matter jurisdiction under FRCP 12(b)(1) come in two forms: (1) facial attacks, and (2) factual attacks." *Hulsey v. Gunn*, 905 F. Supp. 1067, 1070 (N.D. Ga. 1995) (footnote omitted). The Defendants' Motion to Dismiss challenges the existence of subject matter jurisdiction based upon an arbitration agreement, and thus, constitutes a factual attack on the Court's subject matter jurisdiction. *See id.* ("'Factual attacks'" . . . challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'") (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990)). Accordingly, the Court may consider extrinsic documents and evidence beyond the allegations of the Complaint. *See id.*; *see also Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 n.6 (11th Cir. 2001) ("A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination.").

The Federal Arbitration Act ("FAA"), which governs this dispute, mandates that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that a party who is aggrieved by the failure of another party to abide by an arbitration agreement "may petition any United States district court which,

9

save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* After finding that the issue is arbitrable, and upon application of one of the parties, the Court shall stay the district court proceedings until the arbitration has taken place, so long as "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

The purpose of the FAA is "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Thus, the "FAA compels judicial enforcement of a wide range of written arbitration agreements." *Breletic v. CACI, Inc.–Federal*, 413 F. Supp. 2d 1329, 1334 (N.D. Ga. 2006) (Pannell, J.); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, (2001). "There is a 'liberal federal policy favoring arbitration agreements,' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Wiand v. Schneiderman*, 778 F.3d 917, 922 (11th Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

10

1, 24-25 (1983)); *see also Caley*, 428 F.3d at 1359; *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005); *Ruby-Collins, Inc. v. City of Huntsville, Ala.*, 748 F.2d 573, 576 (11th Cir. 1984). Pursuant to that policy favoring arbitration, the FAA mandates that courts "rigorously enforce agreements to arbitrate . . . absent a countervailing policy manifested in another federal statute." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Moreover, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (citations omitted).

While the "FAA creates a presumption in favor of arbitrability," it does not require the parties to arbitrate if they have not agreed to do so. *Paladino v. Avnet Comp. Tech., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998). Thus, under the FAA, a district court must compel arbitration only if the parties have agreed to arbitrate their dispute; "parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 853-54 (11th Cir. 1992) (*citing* 9 U.S.C. §§ 2, 3). Accordingly, "the question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide

11

otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (*quoting AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).

Issues to be decided by the court "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Battels v. Sears Nat'l Bank*, 365 F.Supp.2d 1205, 1211 (M.D. Ala. 2005) (*quoting Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003)). "If a party has not signed an agreement containing an arbitration provision, the district court must decide whether or not the non-signing party can nonetheless be bound by the contractual language." *Chastain*, 957 F.2d at 854 (citations and footnotes omitted). As a general rule, when considering these "gateway issues," the court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *John B. Goodman Limited Partnership v. THF Construction Co.*, 321 F.3d 1094, 1095–96 (11th Cir. 2003) (*per curiam*). "*Prima Paint's* mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator." *Rollins, Inc. v. Foster*, 991 F.Supp. 1426, 1431 (M.D.Ala 1998).

Courts conduct a two-step inquiry when addressing an arbitration agreement that allegedly covers particular statutory claims. *Mitsubishi Motors Corp. v. Soler*

12

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). First, the Court "must determine whether the parties' agreement to arbitrate reaches the statutory issues." *Breletic*, 413 F. Supp. 2d at 1334. This process involves determining whether: (1) the parties have a valid written arbitration agreement; (2) the agreement applies to the relevant claims; and (3) the non-moving party has refused to arbitrate the claims. *Id; see also Goldberg v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 650 F.Supp. 222, 225 (N.D.Ga. 1986). "To make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate the denial." *Chastain*, 957 F.2d at 854 (quoting *T & R Enters. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir.1980) (alteration omitted)).

The Eleventh Circuit has further elaborated on the standard that courts must apply when determining the existence of an agreement to arbitrate:

> Observing that a district court's order to arbitrate a contested agreement without benefit of trial is "in effect a summary disposition of the issue of whether or not there ha[s] been a meeting of the minds on the agreement to arbitrate," the Third Circuit has applied the summary judgment standard in deciding what is sufficient evidence to require a trial on the issue of whether there was an agreement to arbitrate. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980). Adopting that reasoning, we agree that "[o]nly when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* at 54. Further, as in the case of any

13

other summary judgment, a district court considering the making of an
agreement to arbitrate, "should give to the [party denying the agreement]
the benefit of all reasonable doubts and inferences that may arise." *Id.*

*Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785-86

(11th Cir. 2008).

In determining whether the parties had a valid contract that included an

arbitration agreement, the Court generally looks to Georgia state law to determine

whether an agreement to arbitrate was formed between a plaintiff and defendant. *See*

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (state laws governing the making and

enforcement of contracts generally apply under the FAA, while state laws specifically

disfavoring arbitration agreements do not). Under Georgia law, a contract is valid if

there is a subject matter of the contract, consideration and mutual assent. O.C.G.A. §

13-3-1. Continued employment may constitute sufficient consideration for formation

of an arbitration agreement. *See Porter v. CIGNA*, No. 1:96-CV-765-MHS, 1997 WL

1068630, at *1 (N.D.Ga. March 26, 1997). Consideration thus exists if the employee

also assented to be bound by the arbitration agreement.

Once the Court has determined that there is a valid arbitration agreement that

applies to the relevant claims and the non-moving party has refused to arbitrate, at the

second step, the Court "consider[s] whether legal constraints external to the parties'

agreement foreclose the arbitration of those claims." *Mitsubishi*, 473 U.S. at 628; *see*

14

*also Scott v. EFN Invs., LLC*, 312 Fed. App'x 254, 256 (11th Cir. 2009); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). For example, statutory provisions may prohibit the arbitration of disputes involving violations of that particular statute. *Mitsubishi*, 473 U.S. at 628 ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."); *see also Breletic*, 413 F. Supp. 2d at 1335 ("[E]ven though all statutory claims might not be appropriate for arbitration, since the plaintiff made the bargain to arbitrate, he should be held to it 'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue,' and the burden is upon the plaintiff to demonstrate such Congressional intent.") (quoting *Mitsubishi*, 473 U.S. at 628).

In cases involving claims of employment discrimination or other employment-related claims, the Supreme Court has held that employees may be required to arbitrate employment discrimination claims arising under statutes such as Title VII and the ADA if they have signed an arbitration agreement with their employer. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). As the Eleventh Circuit has stated:

> Indeed, compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights

under various federal statutes, including employment-discrimination statutes.

*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005); *see also Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313-14 (11th Cir. 2002)).

    B.    *The Parties' Arbitration Agreement*

In this case, Defendants contend that the Plaintiff signed an arbitration agreement with AGL on two separate occasions. *See* Def. Ex. A, Sturgis Decl. [8-2], Ex. 2, 3. Defendant AGL[4] states that is a subsidiary of AGL Resources Inc., an energy services holding company that employs Defendants Sheree Sturgis and Bobby Avery, and Plaintiff is a former employee of AGL. *See* Sturgis Decl. at ¶¶ 2, 4-6. Although AGL initially hired Plaintiff in July of 1993, he voluntarily resigned from his position in January of 2008. *Id.* at ¶ 6. AGL rehired him in May of 2008, but Plaintiff's employment was terminated on October 27, 2014. *Id.* at ¶¶ 7-8. On April 15, 2008, as a condition of seeking employment, Plaintiff entered into a written "Certification and Agreement" ("2008 Agreement") with AGL. *Id.* at ¶ 13, Ex. 2 [8-4] at 4. The 2008 Agreement provides in relevant part:

> I have received and read, or have been provided with an opportunity to read, the AGL Resources SHARE Guidebook, which sets forth the rules

---

[4] As noted above, Defendant contends that its proper name is AGL Services Company, and that Plaintiff improperly identified it as "Atlanta Gas Company" in the caption of the Complaint and Amended Complaint. *See* note 1.

for AGL Resources' employment dispute resolution program. In consideration for and as a material condition of my seeking employment and possible employment, I agree to abide by the terms of the SHARE Guidebook, which terms are incorporated herein by reference.

I further understand that arbitration provided through the SHARE program is the exclusive remedy for the final and binding resolution of any present or future claims by me against the Company and by the Company against me, and we both agree that any issues or disputes not resolved through other processes provided by the SHARE Program will be decided by final and binding arbitration, all as set forth in the SHARE Guidebook. I also acknowledge that in agreeing to final and binding arbitration, I am voluntarily and knowingly giving up any rights that I may have, now or in the future, to a trial by judge or jury, including any such statutory-based rights or relative to statutory-based claims.

*Id.* at ¶ 13, Ex. 2 at 4.

The 2008 Agreement also provides the rules and procedures that govern an arbitration between the parties, stating that the rules of the American Arbitration Association ("AAA") for the resolution of employment disputes will apply, and AGL will pay the administrative costs and the arbitrator's fees, except for a $50 fee paid by the employee. *Id.* at ¶ 14, Ex. 2 at 4 ("AGL Resources will pay 100% of the administrative costs and fees of the arbitrator, with the exception of a $50 fee to be contributed by the applicant.").

The 2008 Agreement also includes reference to AGL's Employment Dispute Resolution Program, SHARE (Supporting Helpful Alternative Resolutions for Employees), which has a Guidebook that is distributed to employees. *Id.* at ¶ 9,

17

Ex. 1 [8-3]. The SHARE Guidebook explains that arbitration is "mandatory for all employees whose date of hire was on or after October 1, 2002. Additionally, arbitration will be mandatory for those individuals submitting applications seeking employment on or after October 1, 2002." *Id.* at ¶ 10, Ex. 1 at 10. The Guidebook explains that claims subject to arbitration include, among others, claims based in tort and claims based upon allegations of unlawful discrimination. *Id.* at ¶ 12, Ex. 1 at 11. The SHARE Guidebook also states that "SHARE offers you help in resolving work-related disputes that may arise between you and your supervisors, managers, co-workers and the company." *Id.*, Ex. 1 at 3.

Defendants contend that, on April 15, 2008, Plaintiff signed his name on the 2008 Agreement, expressly acknowledging his consent to the rules and procedures of the Agreement. *Id.* at ¶ 13, Ex. 2 at 4. Plaintiff also initialed the 2008 Agreement to indicate that he had "read, understood and agreed to this agreement with AGL Resources." *Id.* at ¶ 13, Ex. 2 at 4. Five years later, on July 31, 2013, Plaintiff signed another agreement that reiterated the same mandatory arbitration terms. *Id.* at ¶ 15, Ex. 3 [8-5] at 5-6 ("2013 Agreement"). Plaintiff signed and initialed the 2013 Agreement electronically to confirm his understanding that arbitration was the exclusive remedy for any of his claims against AGL. *Id.* at ¶ 13, Ex. 3 at 5-6. The 2013 Agreement

18

stated that the electronic signature "is equivalent to a handwritten signature." *Id.* at ¶ 13, Ex. 3 at 6.

Defendants contend that, within a year of signing the 2013 Agreement, on February 6, 2014, Plaintiff completed and signed a SHARE Request for Arbitration. *Id.* at ¶ 16, Ex. 4 [8-6] ("Request for Arbitration"). Plaintiff submitted the Request for Arbitration because he claimed that he had been subjected to discrimination. *Id.* at ¶ 16, Ex. 4 at 2 (Plaintiff wrote that he "was discriminated against for a position that I qualified for, as well as the Dr. approved because of my disability. I was told that if I didn't accept another position that I knew nothing of, I had to resign."). According to Defendants, the Plaintiff's handwritten signature again indicated that he had read and understood the SHARE Guidebook, which requires arbitration for disputes against AGL. *Id.* at ¶ 16, Ex. 4 at 3.

Defendants argue that all of the Plaintiff's claims in this case arise out of Plaintiff's employment with AGL and the termination of his employment with AGL and are thus covered by the agreement to arbitrate. Def. Br. [8-1] at 7. Defendants argue further that Plaintiff's allegations against the AGL managers arose out of the managers' actions against the Plaintiff during working hours. *Id.* According to the Defendants, Plaintiff's claims are based on Defendant's alleged refusal to train him and singling him out; the termination of his employment; Defendants' purported false

19

and defamatory statement about him to AGL personnel; Defendants' alleged disclosure of his psychiatric information; and Defendants' alleged disclosure of his medical information to the AGL Human Resources Department. *Id.*

As noted above, in the Amended Complaint, Plaintiff denies ever signing an arbitration agreement with AGL. Am. Comp. at ¶ 37. In the Plaintiff's response to the Defendants' Motion to Dismiss, Plaintiff also states that he "hereby incorporates his Amended and Restated Complaint for Damages [Docket No. 2] as though set forth herein in its entirety." Pl. Resp. [15] at 1 (footnote omitted). Plaintiff nevertheless does not present any evidence supporting his allegation in the Amended Complaint that he did not sign either the 2008 Agreement or 2013 Agreement, nor does he expressly state in his response that he did not sign those agreements. To the contrary, Plaintiff states as follows:

> Plaintiff is not arguing the validity of the subject arbitration agreement, plaintiff is however arguing the Defendants' pre-litigation conduct. Plaintiff contends the Defendants breached the arbitration agreement when they engaged in bad conduct and acted in bad faith and thus, waived its right to compel arbitration.

*Id.* at 7.

Thus, it appears that Plaintiff is conceding that he did sign the 2008 Agreement and 2013 Agreement, and that those are valid arbitration agreements that apply to his claims asserted in this case. At a minimum, he has not made an an "unequivocal

denial" that he entered into an arbitration agreement, as required to defeat the Defendants' motion. *See Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 853-54 (11th Cir. 1992). The Court also finds that Defendants have presented sufficient evidence to establish that the Plaintiff signed the 2008 Agreement and the 2013 Agreement, and that those agreements are valid and binding arbitration agreements that apply to the Plaintiff's claims in this case. *See Bruce v. PharmaCentra, LLC*, No. 1:07-CV-3053-TWT, 2008 WL 1902090, at *4-5 (N.D. Ga. Apr. 25, 2008) (Thrash, J.) ("By signing and initialing the agreement, Plaintiff [] clearly indicated [his] assent to its terms."). Plaintiff also accepted the terms of the 2008 Agreement and 2013 Agreement by continuing his employment with AGL after he was notified of the arbitration requirement. *See Porter v. CIGNA*, No. 1:96-CV-765-MHS, 1997 WL 1068630, at *1 (N.D.Ga. March 26, 1997) (Shoob, J.) ("Here, plaintiff admits that defendant notified him of the new policy. Plaintiff's continued employment after such notification and failure to object to the new condition demonstrate his intent to be bound. Furthermore, mutuality of obligation is established by explicit policy language stating that both employer and employee are bound to submit employment disputes to arbitration.").

C.    *The Parties' Pre-Litigation Conduct*

As discussed above, the first step in determining whether the parties' agreement to arbitrate reaches the statutory issues involves determining whether the parties have a valid arbitration agreement that applies to the relevant claims, and whether the non-moving party has refused to arbitrate the claims. *Breletic v. CACI, Inc.–Federal*, 413 F. Supp. 2d 1329, 1334 (N.D. Ga. 2006). The Defendants contend that, although the Plaintiff signed the "Request for Arbitration," he has refused to arbitrate his claims pursuant to the terms of the 2008 Agreement and 2013 Agreement. Plaintiff, on the other hand, contends that the Defendants have breached the agreement by "refusing" to arbitrate. Pl. Resp. [15] at 9. Although Plaintiff does not dispute that he signed a mandatory arbitration agreement, he argues that the arbitration agreement should not be enforced by this Court because of the Defendants' "bad conduct" and "bad faith" towards the Plaintiff and because the Defendants themselves breached the arbitration agreement. *Id.* at 7-9.

Plaintiff alleges in the Amended Complaint that he "made several good faith attempts to resolve his claims" against AGL "through mediation and/or arbitration through EEOC and/or SHARE," but AGL "acted in bad faith and no resolution was reached." Am. Compl. [2] at ¶ 36. Plaintiff claims that he made "several good faith attempts to resolve his claims" by participating in "mediation/arbitration" on or about

November 3, 2013, December 19, 2013, January of 2014, February 6, 2014, and October 24, 2014. *Id.* at ¶ 38. Plaintiff does not expressly allege that he participated in binding arbitration, as required by the 2008 Agreement and 2013 Agreement. Furthermore, although Plaintiff admits that he signed a "Request for Arbitration" on February 6, 2014, he claims that he did so "contemporaneously during an arbitration session held on this date while Plaintiff was unrepresented by legal counsel." *Id.* at ¶ 39. He alleges that, because of these "previous efforts of mediation and arbitration, any court-ordered mediation/arbitration would be futile." *Id.* at ¶ 43.

In the Plaintiff's response to the Defendants' motion, Plaintiff again refers to the "mediation/arbitrations" that he participated in with AGL. *See* Pl. Resp. [15] at 4-5. Plaintiff states that he participated in several "mediation/arbitrations" with AGL as follows: on September 13, 2013, he participated in "employer requested mediation through Defendant's SHARE program"; in October of 2013, he participated in "employer requested mediation" through the EEOC; on February 18, 2014, he participated in "employer requested mediation through Defendants' SHARE program"; on March 14, 2014, he participated in "arbitration through Defendants' SHARE program, certified arbitrator Ms. Adrienne Fechter who, after review of the allegations suggested the parties 'come to a resolution'"; and on October 24, 2014, he participated in "employee requested mediation held at Miles Mediation & Arbitration,

where Defendants refused to personally appear stating they felt 'physically threatened' after reviewing plaintiff's personal medical information dated approximately ten (10) days prior to subject mediation." *Id.* Plaintiff admits that he signed the Request for Arbitration form on or about February 6, 2014. *Id.* at 6.

In support of his argument that Defendants' Motion to Dismiss should be denied based on the Defendants' breach of the arbitration agreement, Plaintiff cites to *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005), in which the Ninth Circuit held that an employer's breach of an arbitration agreement deprived it of the right to enforce that agreement. In *Brown*, the employee had filed a notice of intent to arbitrate with the American Arbitration Association ("AAA"), as required under the arbitration agreement, but the employee was later informed by the AAA that the employer had not responded to its request for information. *Brown*, 430 F.3d at 1008. For more than two months, the employee tried to contact her employer to discuss its refusal to participate in arbitration, until she was ultimately told by an individual in the employer's legal department that her complaint "had no merit" and the employer refused to arbitrate. *Id.* at 1009.

After the employee in *Brown* filed the lawsuit against the employer, the employer moved to compel arbitration, but the district court denied the employer's motion on the ground that the arbitration agreement was unconscionable and thus

24

unenforceable under California law. *Id.* On appeal by the employer, the Ninth Circuit

affirmed the denial of the motion to compel arbitration, but on different grounds from

the district court. *Id.* at 1010. The Ninth Circuit found that the employer "clearly

breached the arbitration agreement," and that it even admitted before the district court

that it refused to arbitrate. *Id.* Because the employer admittedly refused to comply

with the arbitration agreement, the Ninth Circuit held that it could not enforce the

agreement. *Id.* at 1009-10 ("Dillard's breached its agreement with Brown by refusing

to participate in the arbitration proceedings Brown initiated. Having breached the

agreement, Dillard's cannot now enforce it.").

In this case, the Defendants deny that they ever refused to arbitrate and contend

that it was actually the Plaintiff who refused to arbitrate, not the Defendants. Def.

Reply [17] at 2-3. Defendants have presented evidence that, as of March 10, 2016, the

Plaintiff has not participated in arbitration with AGL under the SHARE program.

Wise Decl. [17-1] at ¶ 10. Defendants contend that their counsel communicated with

Plaintiff's counsel on multiple occasions about selecting an arbitrator, but Plaintiff's

counsel "refused to proceed with arbitration and insisted Plaintiff had not signed any

such Arbitration Agreements." Def. Reply [17] at 2. In support of that contention, the

Defendants have produced two emails from Plaintiff's counsel dated January 9, 2015

and January 21, 2015, stating that the Plaintiff never signed any arbitration agreement.

25

*Id.* at 3; Wise Decl. [17-1] at ¶¶ 8-9, Ex. C (letter from Plaintiff's counsel to Defendants' counsel dated January 9, 2015, stating "Mr. Batiste contends he never signed an Arbitration Agreement with AGL"), Ex. E (letter from Plaintiff's counsel to Defendants' counsel dated January 21, 2015, stating "it is our contention Mr. Batiste never signed a mandatory arbitration agreement in 2008.").

Although the Defendants have presented evidence supporting their contention that it was the Plaintiff who refused to arbitrate his claims, the Plaintiff has not presented any evidence to support his contention that he requested arbitration but the Defendants refused to participate in arbitration. In his response brief, he contends that he participated in several "mediation/arbitrations" with AGL, but states that most of those sessions were efforts to mediate his claims, and only one occasion was actually arbitration before a certified arbitrator. *See* Pl. Resp. [15] at 4-5. Plaintiff alleges that, on March 14, 2014, he participated in "arbitration through Defendants' SHARE program, certified arbitrator Ms. Adrienne Fechter who, after review of the allegations suggested the parties 'come to a resolution.'" *Id.* at 5.

In support of his contention that he participated in arbitration on or about March 5, 2014, Plaintiff has submitted an email dated February 4, 2014, from Jennifer Victor, SHARE program director, to the Plaintiff informing him that the "arbitration will need to be through one of the neutral organizations listed on this form," and an email from

26

Plaintiff to Victor dated February 6, 2014, stating "Jennifer send me a list of the group to pick from." Pl. Ex. A [15]. There is no indication of what happened after this point, except that Plaintiff at some point subsequently denied the obligation to arbitrate and refused to participate in arbitration. Certainly, this brief email exchange does not establish that Defendants failed in good faith to participate in arbitration.

Plaintiff has also submitted his own affidavit stating that, on March 14, 2014, he met with Ms. Adrianne Fechter of "Fechner [sic] Mediation and Arbitration Service," along with Daniel Oh, the HR Director, and Jennifer Victor, the AGL attorney, but the "meeting changed from arbitration to mediation." Pl. Ex. B [15], Batiste Aff. at ¶ 10, at 4. This brief and entirely unexplained statement also does not itself suggest a breach or bad faith failure by Defendants in any way, especially when it was Plaintiff who later unequivocally refused to participate in arbitration. Plaintiff also mentions a meeting in October of 2014, which was before another mediator, at which Plaintiff states that Defendants' representatives failed to appear in person because they stated they viewed Plaintiff as a threat. *Id.* The Court is again unable to find that this brief and unexplained statement shows a breach of contract or bad faith conduct.

To the extent Plaintiff attempted to mediate this case with Defendants on several occasions without success, that itself does not show a breach of the arbitration

27

contract. Nothing about the arbitration contract requires Defendants to agree to settle any particular case in mediation or offer a settlement that the Plaintiff perceives to be fair. Plaintiff's option at that point is arbitration, and he has not shown on this record evidence to support a finding that this remedy has been denied to him as the result of a breach of contract by Defendants or some other fundamental unfairness. To the contrary, the undisputed evidence shows that it was Plaintiff who refused to acknowledge the existence of an arbitration agreement.

In sum, the Defendants have demonstrated that a valid, binding agreement to arbitrate exists between the parties, the arbitration agreement covers the issues that Plaintiff raises in this lawsuit, and Plaintiff has refused to arbitrate his claims pursuant to the arbitration agreement. In his response brief, Plaintiff does not dispute that a valid, binding agreement to arbitrate exists between the parties or that this agreement covers the issues that Plaintiff raises in this lawsuit. Moreover, although Plaintiff contends that he attempted to participate in arbitration but the Defendants refused to arbitrate, the Plaintiff has not presented evidence to support that allegation. Instead, the Defendants have presented evidence establishing that Plaintiff has refused to participate in binding arbitration, and the Defendants' evidence remains unrebutted by the Plaintiff. Furthermore, the parties allege no "legal constraints external to the parties' agreement" that would "foreclose the arbitration" of Plaintiff's claims, and the

Court has found no such constraints. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Accordingly, the undersigned finds that Plaintiff must submit his claims to arbitration and that this action should not go forward in this Court.

In connection with his response to the Defendants' Motion to Dismiss, the Plaintiff also filed a "Demand for Jury Trial Relating to 'Defendants' Motion to Dismiss Plaintiff's Amended Complaint and to Compel Arbitration of Plaintiff's Claims or, in the Alternative, to Stay Litigation Pending Arbitration of Plaintiff's Claims'" [16] ("Demand for Jury Trial on Arbitration Issue"). Plaintiff submitted no memorandum of law in connection with his Demand for Jury Trial on Arbitration Issue, nor does he state what specific factual disputes exist in relation to the Defendants' motion that should be resolved by a jury.

As explained above, the Eleventh Circuit has stated that trial courts are to treat motions to compel arbitration as procedurally akin to summary judgment motions. To obtain summary judgment, "[w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Prop. In*

*Greene & Tuscaloosa Cntys in State of Ala.* 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*) (quotations omitted).

> In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

*Id.*

Thus, the issue is not simply whether the parties agree as to all of the material facts surrounding the arbitration agreement. The issue is whether there is a disputed issue of material fact based upon the evidence submitted by the parties. If the moving party produces sufficient evidence to make its showing, in order to defeat the motion to compel arbitration, the nonmoving party must submit significant, probative evidence demonstrating the existence of a triable issue of fact. The undersigned finds that Plaintiff has failed to do so in this case. Accordingly, the undersigned finds that he has failed to demonstrate that he is entitled to a jury trial on any of the issues presented in the Defendants' Motion to Dismiss and his Demand for Jury Trial on Arbitration Issue [16] is **DENIED**.

In their Motion to Dismiss, the Defendants have requested an order compelling Plaintiff to submit to arbitration of his claims and have also requested dismissal of this

case. In the alternative, the Defendants request that the Court stay the case until the arbitration proceedings have been completed. In his response brief, the Plaintiff does not address the issue of whether the case should be stayed, or whether dismissal of the action is appropriate. The Court determines that, because all of the Plaintiff's claims in this case are subject to arbitration, dismissal of this case is appropriate. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (approving the dismissal of a case on the ground that all of the claims were subject to an enforceable arbitration agreement); *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." (emphasis in original)); *see also Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 926 (N.D. Tex. 2000) ("to maintain jurisdiction under such circumstances would serve no useful purpose").

## III.   RECOMMENDATION

For the above reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss [8] be **GRANTED**, that the Plaintiff be **ORDERED** to submit his claims to

31

arbitration, and that this action be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 13th day of June, 2016.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO STAY LITIGATION PENDING ARBITRATION** has been served upon the following, via email and by depositing a copy of same in the U.S. Mail, postage prepaid, on this 26th day of September 2019:

Victoria Woods
7448 Sycamore Court
Orland Park, IL 60462
vickie.e.woods@gmail.com

/s/ *Bryan R. Bienias*
Attorney for Nicor

59004096v.2